You must be Mr. Greenberg. I am, Your Honor. How are you? Thank you. Very well, Your Honors. I'm appearing for Appellant Mr. Moore. I wanted to address the second issue first because it seems to me there's less hurdles to jump over on that particular issue, which is the retroactivity of the Hansen decision, specifically the due process problem of applying ---- Well, here's my problem with that issue, if we just launch right into it. You've got inconsistent intermediate court interpretations of a State Supreme Court opinion, right? Well, I would call it ---- You've got Taylor on the one hand. Taylor and Wesley. Yeah. Issued within days of each other, weeks, hours, very close together, interpreting Ireland, the Supreme Court of California opinion. And they stand there, they're humming along, and if I understand correctly the rule in the state courts, if you have two opinions of the Court of Appeal that are in conflict with each other, then any non ---- I mean, it doesn't apply to the State Supreme Court, but any lower court in the state, whether it be municipal or superior or Court of Appeal, can choose between, can take one or the other. It's not bound to follow either. Am I ---- No, you're correct. Okay. So how can you say there's a sort of a sea change in the law when you've got these two lines of authority? Well, the lines of authority don't conflict. Ireland deals with a case in which in an assault with a deadly weapon, the defendant shot his wife as she was sitting on the couch. Ireland used the formulation that this is an inherent part of the act of homicide and therefore it merges. Wesley comes along. You have a man shooting into a building in order to kill someone. They charge him with felony murder predicated on that crime, 246, shooting into a building. And they say it merged. Pardon? They say it merged. It merged. Based on that integral part of the act of homicide test. Taylor comes along where the specific crime is, I believe, sale of heroin resulting in an overdose that kills the victim. Well, there's an ambiguity then if you use the term inherent part of the act of homicide because in a continuous course of conduct, I guess that victim died. But it's not inherent in the same way that an assault with a deadly weapon is inherent in the act of homicide if I shoot my wife sitting on the couch. So what you have is the Taylor court came up with a different or a gloss, what I would call a gloss on the inherent part of the felony test. What makes it inherent or not is whether you have a collateral felonious intent. Now, I see these two tests as related. I think over the 20 years from Taylor and Wesley till you get 25 years till you get to Hansen, I think the Supreme Court was saying these tests are not inconsistent. They're the same. They're on the same track so that you can enhance. And it said Taylor was the right formulation. And when you apply the right formulation to this, well, a fact pattern, you get the Taylor result. Well, but there's there's there's another problem in Ireland and all through the 25 years, they announced that merger, unlike determining what the predicate felony is, merger is determined on the facts of the case. So that in Hansen, the way I see it, what they did is they determined on the abstract elements of a 246 that you can have a collateral felonious intent. But when you have a specific case like Wellesley, where the man shoots into the building in order to kill someone, or like this case where you shoot into the motor vehicle in order to kill someone, you don't have anything different from the Ireland situation where the man shot at his wife. She just happened to be sitting on the couch instead of in her car. So I see there's a lot of switches going on with the Hansen case. And a lot of it arises from this problem that I talked about in the first issue about judicial legislation. But one of the switches is switching from dealing with these problems on the facts. It says Ireland says included in fact to dealing with it on the abstract elements of the crime and the abstract elements of the crime. A 246 becomes something different than it does when you're dealing with the specific facts of the case. You see it in the Smith case. Smith case, Justice Mosk said, and I think this is true, impliedly approved of Wellesley in 1984. Smith dealt with the crime of abuse of a child. Now, the Supreme Court said there's many ways of committing that crime, some passive, some active. But when it's committed actively in an assaultive sense, where it's sort of an Ireland situation, then it merges. But presumably, there are going to be instances, specific cases, where abuse of a child will be able to predicate second-degree felony murder because it won't merge. So as I say, this switch from the facts to the elements is something that was not announced in Hansen, but was something that they did. So what you're left with is a situation, I believe, that from 1970, there's no reason, nothing in Taylor, I believe, that puts you on notice that Wellesley is not good law. Smith didn't think that Taylor undercut Wellesley. Podar didn't think that Taylor undercut Wellesley. Podar and Smith are both California Supreme Court decisions. It was not until Hansen just came up and announced that, and it wasn't the adoption. They were cautious. They didn't adopt the Taylor test either. They adopted some vague test, which hasn't been played out yet. But you come to Hansen, and they say 246 can predicate it because it doesn't emerge, because it's not the type of thing that elevates a felony that will circumvent the basic requirement of malice of forethought. And they analyze it based on not the facts of Hansen, or it may have been the facts of Hansen. Hansen claimed he wasn't shooting at anybody, but they analyze it on the elements of the crime. You could shoot at a building and have some collateral felonious intent, leave your calling card, scare somebody, whatever. But something different from- Do you see Hansen and Wellesley as opposites or consistent? Well, in terms of the bare ruling, opposites. Hansen says 246 can predicate second-degree felony murder. Wellesley says it can't. We see them as inconsistent. I see it as inconsistent. I also see it as inconsistent with the Ireland test. Well, at least Hansen thought it was inconsistent with Wellesley because it said so. Correct. So you've got two decisions out there by the court of appeals, one going one way and one going another way. No, no, no. You have – if you're saying Taylor, as Justice Kozinski was saying, if you say Taylor and Wellesley are going in different directions, I don't think they're going in different directions. If you say Wellesley and Hansen are going in different directions, yes, Hansen is a California supreme court decision. Wellesley is a court of appeal decision. Okay. So at the time of the crime, were there two strains of thought in the California appellate courts? No, I don't believe there was. I believe what there was was two formulations of the same test that the California supreme court treated as the same up until Hansen. Would the panel that wrote Hansen agree with you? I don't know. They didn't say. Justice Mock certainly would agree with me. They say what they think about Wellesley. They say that – correct. They say that Wellesley is disapproved because 246 is not the type – they don't apply the Taylor test. They apply this sort of – I call it – it's not a rule, it's a rationale. It may well be, but you're going an awful long way to say that there was not two distinct lines of cases that were emerging in the California appellate courts when Hansen specifically says it's in opposition to Wellesley. It says that Wellesley was misplaced. The view was misplaced. Well, let me back up. I don't want to beg the Federal question, which is was Hansen an unforeseeable expansion of this law. Now, I think if you look at all the cases, and we've traced the history in the briefs, all the cases treat the two formulations. I don't think it's two lines of thought. They're two formulations of the same thing. Whether it's the Ireland language or the Taylor language, these are two formulations of the same thing. They are treating these as consistent. They are treating these as supporting the ruling in Wellesley. As I say, Smith – Wellesley is cited in Smith. I'm having difficulty with the argument. If I just read Hansen, I mean, how could it be more clear what Hansen is saying, whether they're right or wrong? I don't know. But it seems to me if there are two strains of thought going through this appellate structure, which is not – which occurs not infrequently in California, that you could say that sooner or later someone's going to choose one side or the other, and therefore, it interferes with your argument. I understand you have to overcome that theory. But what I don't understand is how you can't say that the Hansen court, at least, has set up a specific two-theory when they say that they're rejecting Wellesley. They say they're rejecting the Ireland formulation. They call Taylor, which is the source of the scoletto felony rule – felony intent rule – they're calling it an interpretation or a gloss. I think they say that in Hansen. Now, what they're saying is that Wellesley applied, in some sense, both rules incorrectly, because both rules resolve themselves on this sort of third test that Hansen comes up with, which is, is it the type of felony that will elevate – well, is it the type of test that will elevate the felony so as to circumvent malice aforethought in too many cases? I'm trying to formulate Hansen as clearly as I can. I don't think it's a very clear case. So I don't think you're dealing with two lines of thought in the sense that you're dealing with two separate tests that come out differently. You can apply the Taylor test, which Hansen – Hansen likes, to the facts of Ireland. You come out with the same result. Apply it to the facts of Wellesley, where you're shooting into a building at someone in order to kill them. You come out with the same result. Apply both tests, both formulations to this case, where the defendant is shooting in the car at somebody in order to kill them. You come out with the same result. The Hansen takes a different tact and does so in a way that rules that 246 can predicate and does not merge seems to me very unforeseeable. I don't – And the Federal rule that this would violate, if you're right, is Bowie? Bowie v. City of Columbia. It would be – as I understand – The Court hasn't gotten a return to that in quite a few years, has it? There's a United States v. Lanier, I believe, reannounces the rule. It seems to me a fairly straightforward, well-established rule of due process. It injects an ex post facto principle into judicial decisions. And second-degree felony murder doesn't exist anywhere if not in judicial decisions. Let me take a couple of minutes and talk about the first issue. I don't actually have a lot to say about it. It's set forth where it seems to me fairly clear that this – that second-degree felony murder is a judicial creation. It seems to me that the second hurdle is also clear, that a crime in California that's a judicial creation, and only a judicial creation, is in violation of the California Constitution. So where do we get to the Federal due process violation from there? Hicks v. Oklahoma. If you agree that the separation of powers clause of the California Constitution protects a liberty interest, and I think it does, especially when you're separating the judiciary from the legislature, it's as simple as, you know, the judge can't apply the law that he makes up. Then you have it protecting a liberty interest. The arbitrary denial of a liberty interest, even if it's only a State liberty interest under Hicks, becomes a Federal due process violation. I see I have some time left. I'd like to reserve it unless the Court has other questions. Okay. We'll have him stay. Good morning, Your Honors. Eric Scherr for the People's State of California. I'll start with that first issue we just left with. Petitioner is asking this Court to do something that no California court has done in the 132 years since the murder statutes were codified in 1872, and that's to claim that the second-degree felony murder rule is unconstitutional as a matter of California law. Hicks does not support Petitioner's position. I think on the first issue he argued, which is the second issue, he's not saying it's unconstitutionally, he's saying it's ex post facto. I'm sorry. I was starting with the other issue. You're starting with the other issue. Yeah, the one we left off on. I thought that was, I'm sorry. But I just wanted to point out that Petitioner reads Hicks too broadly in that context of that, the first issue and the brief. I'm sorry, I misunderstood. You're starting with the first issue. That's fine. I'm with that. Hicks says a state violates a criminal defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant of a state law entitlement. It only prevents a state court from denying an isolated defendant the benefit of a state law that applies to all other defendants in that state. That's not what we have in this case. Second degree felony murder has been applied for, as I said, over 100 years and is not being applied to this defendant in a way that's different from any other defendant. And yet the state supreme court has said that this is a judicially created crime and has urged the legislature to change it and to do something about it and the legislature has refused to act. I think that the term I used in my brief is there's been some judicial hand wringing about the second degree felony murder rule in California. But the fact remains that no court has ever held that it is unconstitutional as a violation of the separation of powers doctrine. And even if you look at Dillon, which is the case that seems in a footnote to spurn all this, number one, it is a footnote, it's dicta, because the case dealt with first degree felony murder. And they say, by the way, on second degree felony murder, we think this, but it's in a footnote. More than that, that opinion is only a three judge plurality opinion of the seven member California Supreme Court. Dillon has six separate opinions. Most of them don't even discuss second degree felony murder because it wasn't an issue in that case. So yes, there has been some language in the opinion saying, we're not sure about this. Maybe the legislature has taken a look at it, but the fact is the legislature has not. The legislature has been satisfied that the courts have interpreted penal code section 189 as incorporating what was a common law, the second degree felony murder rule. They haven't seen any need to revise the statutes. And given, again, this long, over 100 year history, we think that is telling. On the second issue, the ex post facto, a petitioner discusses these two lines of cases as if they were really competing lines of cases that were also complementary, so that they could stand with one another. The fact is Wesley came out, and as your honor mentioned, within a week, another case came out saying, no, no, no, no, Wesley reads Ireland too broadly. The test that it posits for Ireland would do away with the second degree felony murder rule, and that's not what the court in Ireland intended. So then you have years and years of decisions where the merger doctrine of Ireland is interpreted very narrowly. It is restricted to assault cases. It's sort of a disfavored doctrine in the state. And then you get Hanson, and Hanson couldn't be any clearer. Hanson makes clear that it's not announcing a new rule. It's in disapproving of Wesley, it's saying Wesley got it wrong. Wesley is misplaced. They don't announce a new rule. If they did announce a new rule in Hanson, they never would have been able to apply it to Mr. Hanson in that case, because it would have violated his rights of ex post facto. But the court has no problem with that, because as it says, we're not announcing a new rule. We are simply applying settled California rule to this new set of facts. Unless there are other questions from the court, I'm prepared to submit the matter. Thank you. Thank you. Let me just point out that Taylor, the Taylor in 1970 that came out shortly after Wesley, said nothing about Wesley. Taylor was talking about the language of Ireland, the integral part of the homicide test. It said nothing. It didn't say Wesley was wrong. It didn't say Wesley was wrong about a violation. I'm not aware of Wesley. Pardon? Probably was not aware of Wesley. They were close enough in time, and given this was before electronic publication of opinions and all that, I think it would be a stretch to think that they knew about each other. Well, if they were for all intents and purposes, they should know. Perhaps. Perhaps. I don't know. But it seems to me nothing is inherent in the type of legal question it is for them to force the conclusion that they would have mentioned Wesley if they knew about it. Again, you're dealing with a test that was announced to be factual, if it was included in fact, not based on the elements of the crime. Well, what about the point the State makes that if it really was a change in the law, then they couldn't have applied it hence in the State Supreme Court. It would have been ex post facto, neither be hence themselves. Well, the premise is one that begs the question. That's the question we're here to decide. I mean, if they're wrong here, they were wrong to apply it to Hanson. Well, but they clearly didn't think they were making. I mean, sometimes courts will say that. They'll say, you know, we used to have this doctrine. We've now thought about it in light of experience or in light of the fact that we have a different composition of the court. You know, whatever they say, we now have a different path. The U.S. Supreme Court does that with some regularity, as we know. We saw it last term at least once or twice. And we see it fairly, you know, say we are changing course. The State Supreme Court did not say that here. You know, you start out with the disability in making this argument that the original opinion, the one you think was being turned around, was not a State Supreme Court opinion. So it wasn't really binding on anybody. It wasn't very, I mean, it was sort of persuasive. And I grant you that it would have been the kind of thing that a prosecutor might look at in deciding whether to charge the crime. So I'm not saying it was valueless, but it was not a situation where the Supreme Court had to say, you know, we are changing our minds because we moved this way and now we're moving this way. Well, it's correct. They were not overruling Ireland, right? Pardon? They did not purport to overrule Ireland. They did not purport to overrule Ireland, no. But, I mean, what we're talking about is what would reasonably one would reasonably expect from that history from 1970, when Wesley purported to apply the Ira Wynne rule to Section 246. Is that the test, though? We don't – it's not what we reasonably expect. It's whether there's a radical and unforeseen change in the law. I think there is. Well, that – Okay. What do we do with the State court's determination that really this wasn't unforeseen? Well, the State court actually didn't even rule on that. The State court – the State court ruled that it was foreseeable that 246 could – is an inherently dangerous felony that could predicate second-degree murder, which is a separate question from merger. The district court, in fact, pointed out that the State court did not address that question. It was not responsive to the issue that was raised. Well, they do – the State court – State appellate decision does say we're not reversing some previous uniform appellate rule. I'm sorry? I mean, they talk about Hansen saying, well, really not – Hansen was not reversing some uniformly applied rule. Well, Hansen had two parts. Hansen had said that 246 is inherently dangerous and therefore – on its elements and therefore could predicate second-degree murder. That is what I believe that the court of appeal was drawing upon to say that it was foreseeable. There's no argument that that wasn't foreseeable. A violation of 246 is inherently dangerous. How do you distinguish this from the circumstance we found ourselves in at Webster? I don't know if you're familiar with that. It came out about a month ago. But we were considering a buoy violation on that one. And basically we were faced with a situation where if you were sitting down predicting based on precedent what the Supreme Court of California would do, you might say one – might say, well, they're likely to do X. But in fact, they did Y. And we said, well, that's true. The overwhelming number of cases would have predicted X, but there were some other cases that predicted it on the Y. And that's enough to survive a buoy analysis. But I don't believe anything predicted Y in this case. As I say, I go back – I go back to my point that Taylor – the formulation of Taylor was a differentiation of something that was inherent in the formulation of Ireland. It was a gloss. And for 25 years, the California Supreme Court, not just courts of appeals, treated it as a gloss, treated it as consistent. And again, I point out Smith in 84, a California Supreme Court case, cites with approval in setting up its ruling. You're not arguing that in effect Hanson overruled Ireland. Let's just talk about that carefully. Correct. It did not even purport to overrule Ireland. But you're not saying that – I mean, they could have said why not. And in fact, they could have simply done it anyway. Correct. Because – I mean, I don't know the words anymore, but you could say, well, you could sort of make a statement by assaulting somebody. You know, you could have a collateral – you know, if you take the Ireland situation and you apply the Hanson rationale, you might come out the other way. Correct. There could be cases where it would, yes. But the point is that they purport to be – You're not arguing that Hanson, Saborza overruled Ireland. No. What I think Hanson does in effect – That would be a more powerful argument, if you were to make it. Well, what I think – Especially if it's a winning argument. I think it's – It's not one he can make. I think it's – if Salentio overrules the Ireland test to the extent that it's no longer based on the facts, whether a crime is included in fact within the act that constitutes the homicide, it seems to me what Hanson is going to open the door to is the test for merger will now be an analysis of the abstract elements of the crime and whether you can identify a collateral felonious intent, unless for some reason the collateral felonious intent rule somehow creates an anomaly. They leave that reservation for themselves, too. So to that extent, I think Hanson sues Salentio unforeseeably modifies the test in Ireland in a way that the collateral felonious intent rule did not modify anything in Ireland. It just, as I say, differentiated something that was inherent in it. So we're dealing with a situation where they're not – they're not being explicit about what it is they're doing. This is not to say they're doing anything dishonest, but what's happening, as we see often in the progress of the law, is that cases require for principles and concepts require differentiation until suddenly they become clear. Hanson did not advance the clarity of the situation. Okay. Thank you. Thank you, Your Honor. The case is now submitted. Okay. We'll hear the last case on the calendar, the last RU case on the calendar.      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Wallace, Kozinski, Thomas